UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONNIE WILLIAM LANE, | ) | |
| Petitioner, | ) | |
| vs. | ) | Case No. 1:13CV00116 SNLJ |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S. C. § 2255 to vacate, set aside or correct sentence by Ronnie William Lane, a person in federal custody. On April 30, 2012, Lane plead guilty before this Court to the offense of conspiracy to possess pseudoephedrine with the intent to manufacture methamphetamine and, on July 30, 2012, this Court sentenced Lane to the Bureau of Prisons for a term of 151 months, a sentence within the sentencing guideline range. Lane's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**I. PROCEDURAL HISTORY**

On September 8, 2011, a SEMO Drug Task Force confidential informant (CI) made a recorded call to the defendant Ronnie W. Lane. (Plea Stip, p. 9) The informant told Lane that they had six boxes of pseudoephedrine pills that an associate was wanting to get rid of in exchange for money and some methamphetamine when it was finished. *Id*. Lane indicated that would be fine and that his guy would make sure that it would happen. *Id*.

The CI met with Lane and they proceeded to pick up the co-defendant Sherma Kelley. The CI and Kelley discussed how much the informant's "friend" wants for the pills, and the CI

indicated that the friend has access to more pills. *Id*. Kelley paid the CI $240 for sixty, 120 milligram pseudoephedrine pills containing 7.2 grams of actual pseudoephedrine, and indicated that there would be a small amount of methamphetamine forth coming as well. *Id*. Kelley then dropped the pills off at a residence in East Prairie, Missouri. *Id*.

Later on September 8, 2011, officers executed a search warrant at the residence in East Prairie where Kelley had delivered the pseudo pills. *Id*. The pills were recovered along with a very small amount of methamphetamine residue, some instant cold packs, and some coffee filters that may have been used in the process of manufacturing methamphetamine. *Id*.

Subsequent investigation revealed that Kelley and some of the occupants of the house had been purchasing pseudoephedrine under suspicious circumstances, although not in large amounts. (Id) Kelley was later interviewed and admitted that she had given the pseudo pills to two of the occupants in the house to be used in the production of methamphetamine. (Id) Lane was indicted by a federal grand jury for the Eastern District of Missouri sitting in the Southeast Division at Cape Girardeau and charged as follows:

> The Grand Jury charges that: Beginning at a time unknown to the Grand Jury but including September 8, 2011, in Mississippi County, in the Eastern District of Missouri and elsewhere, Ronnie William Lane and Sherma Ann Kelley, the defendants herein, did knowingly, willfully and intentionally combine, conspire, confederate and agree together and with other persons known and unknown to the Grand Jury, to knowingly and intentionally possess a list I chemical, pseudoephedrine, with intent to manufacture methamphetamine, a Schedule II controlled substance, in a manner other than as authorized by Title 21, United States Code, Section 801 through Section 971 inclusive, in violation of Title 21, United States Code, Section 841(c)(1) and punishable under Title 21 United States Code, Section 841(c). All in violation of Title 21, United States Code, Section 846.

Lane made his initial appearance on January 18, 2012, and would ultimately plead guilty as charged on April 30, 2012. At no time did lane raise the issue of the sufficiency of the indictment before the District Court. Lane was sentenced on July 30, 2012, to 151 months of incarceration, a two year term of supervised release and a $100 special assessment.

Lane subsequently filed his motion to vacate the sentence pursuant to Title 28 United States Code, Section 2255, herein.

## II. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*.

at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## III. DISCUSSION

### A. The Indictment to Which Lane Pleaded Guilty Properly States an Offense.

Lane states in his first ground for relief that he was charged with conspiring to possess a list I chemical with intent to manufacture methamphetamine, under 21 U.S.C. §§ 841(c)(1) and 846, which is a correct factual statement. Lane then asserts that "The offense of a violation of 21 U.S.C. Section 841(c)(1) has nothing to do with the conspiracy to manufacture methamphetamine. The indictment fails to charge an offense." (2255 Motion, p. 5)

The assertion that possessing pseudoephedrine with the intent to manufacture methamphetamine has nothing to do with conspiring to manufacture methamphetamine is clearly wrong. Clearly, Lane and his companion could have easily been charged with conspiring to manufacture methamphetamine, or even an attempt to manufacture methamphetamine based upon the same facts instead of possession of the precursor chemical with the intent to manufacture. That the government chose to charge him with the offense that most readily reflected his conduct does not negate the validity of the charge.

Title 21 United States Code, Section 841(c)(1), criminalizes the knowing or intentional possession of pseudoephedrine, which is a list I chemical pursuant to 21 U.S.C. § 802(34)(K), with the intent to manufacture a controlled substance. Methamphetamine in all its variants is, by law, designated a controlled substance under 21 U.S.C. § 812.

Title 21 United States Code, Section 846, criminalizes any attempt or conspiracy to violate a provision of the federal Controlled Substances Act. At its simplest, a conspiracy is nothing more than a criminal partnership, an agreement, or an understanding between two or more persons to do something that is illegal. *United States v. Figueroa*, 900 F.2d 1211 (8th Cir. 1990) The offense for which Lane was indicted was committed when he, Sherma Kelley and the others all agreed to possess the pseudoephedrine with the intent that it would be made into methamphetamine.

Clearly, the statutes which Lane was charged under criminalizes the conduct which Lane admitted to having engaged in with Kelley and others. As a part of the written plea agreement and stipulation, Lane agreed that the elements of the offense to which he was pleading guilty were as follows:

> The defendant admits to knowingly violating Title 21 United States Code, § 841(c)(2), and Title 21 United States Code, § 846, and admits that there is a factual basis for the plea and further fully understands that the elements of the crime of Conspiracy to Possess a Listed Chemical with Intent to Manufacture Methamphetamine, as charged in the Indictment, has three essential elements, which are:
>
> *One,* two or more persons reached an agreement or came to an understanding to possess pseudoephedrine, a List I chemical;
>
> *Two,* the defendant voluntarily and intentionally joined in the agreement or understanding; and

> *Three,* at the time the defendant joined in the agreement or understanding, he knew, that the pseudoephedrine was intended to be used to manufacture methamphetamine. (Plea Stip. p. 10)

Lane cites no authority to support the proposition that the offense to which he plead guilty does not constitute an offense under federal law, nor does he cite any authority for the proposition that Congress had no legitimate authority to criminalize his conduct in the first place. As such there is simply no merit to his contention that his indictment for the offense in question was improper.

**B. Lane Did Not Receive Ineffective Assistance of Counsel.**

In Ground Two of his Section 2255 Motion Lane claims that he received ineffective assistance of counsel as a result of his attorney's failure to object to the indictment, which Lane now believes does not state an offense.

In order to prevail on a theory of ineffective assistance of counsel, the movant must demonstrate two separate things; first that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient) , and secondly that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001) While counsel has a duty to make reasonable investigations and decisions, "in determining whether counsel's performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" ". *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (*citing Strickland*, 466 U.S. at 689)

In order to prove that counsel's error was prejudicial, movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings

would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome". Id. However, the reviewing court need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103 F.3d 710, 712 (8th Cir. 1997)

In this instance counsel is accused of being ineffective for his failure to object to a valid indictment. In order to obtain relief on a theory of ineffective assistance of counsel, the preliminary question is whether the motion, if made, would have ultimately been successful. If not then counsel cannot be considered to be ineffective for failing to file a motion upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983) See also: *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988) (An attorney is under no obligation to pursue an unpromising investigation).

Had Lane's attorney made the objection that the indictment was infirm, it could not have prevailed because the indictment clearly states an offense. As such, Lane's attorney was not ineffective for failing to do so, and this Ground for Relief shall be dismissed as well.

**C. The District Court had Jurisdiction to Sentence Lane.**

For Ground Three of his Section 2255 Motion, Lane avers that the District Court was without jurisdiction to impose a sentence due to the alleged defect in the indictment.

Title 18 United States Code, Section 3231 vests original jurisdiction in the district courts of the United States over all offenses against the laws of the United States. The constitutionality of Congress' authority to regulate the manufacture and distribution of controlled substances has been a settled issue of law for a considerable time. *United States v. White*, 399 F.2d 813, 822 (8th

Cir. 1968) (Congress has power to regulate drugs not moved in interstate commerce), *United States v. Richardson*, 477 F.2d 1280, 1282 (8th Cir. 1973), (no merit to argument that 21 U.S.C. § 841(a)(1) is unconstitutional), *United States v. Patterson*, 140 F.3d 767, 772 (8th Cir. 1998) (21 U.S.C. § 841(a)(1) is a valid exercise of the Commerce Clause power).

There is simply no argument that this Court did not have valid subject matter jurisdiction in Lane's case. As noted, the indictment clearly states an offense. As such Lane's contention that this Court was without jurisdiction to sentence him is completely without merit.

**D. *Alleyne v. United States* Not Applicable to Lane's Situation.**

Although not raised in his Section 2255 motion, in his memorandum of law Lane argues that his sentence was improper due to the recent change in the law as a result of the Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

Lane was sentenced on July 30, 2012, and did not file an appeal. *Alleyne* was not decided until June 17, 2013, long after Lane's conviction had become final. Nothing in *Alleyne* may be interpreted to suggest that the Court intended it to be applied retroactively. In fact, *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the Court has already decided that other procedural rules based on *Apprendi* do not apply retroactively, which strongly implies that they will not declare that Alleyne should be applied retroactively either. *Schriro v. Summerlin*, 542 U.S. 348 (2004).

In *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the Supreme Court held that any fact which increases a mandatory minimum sentence is an "element" of the crime and thus must be submitted to the jury and proven beyond a reasonable doubt. (id at 2159-2163) *Alleyne* dealt with a defendant who had his sentence enhanced, not by a criminal conviction, but by the fact that the

sentencing court found that he had brandished a firearm during the offense. (*Id.* at 2153)

In Lane's case, by statute, the offense charged carries a possible penalty of not more than twenty years incarceration, irrespective of the amount of pseudoephedrine which was possessed. Because there were no special facts involved that needed to be proven, Lane would not be entitled to relief in any respect, even if the decision were to be applied retroactively to his case.

## IV. CONCLUSION

For the foregoing reasons, Lane's § 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Lane has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 16th day of October, 2013.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE